CITY OF HOUSTON, Appellant,

v.

George L. CALDWELL, Appellee.

No. 8188.

Court of Civil Appeals of Texas, Beaumont.

April 12, 1979.

**495**

Robert M. Collie, Jr., Harriet E. Hubacker, John R. Whittington, Jr., Houston, for appellant.

William G. Nedd, Houston, for appellee.

KEITH, Justice.

We withdraw our prior opinion and substitute this in lieu thereof.

Plaintiff alleged that he was an arson investigator and a member of the Fire Department of the City of Houston; that while on duty with the Fire Department on December 21, 1972, he was stricken with a serious heart attack which rendered him unable to perform his duties, and that he retired from the Fire Department "solely for medical disability to perform his duties." He remained on the payroll at full pay of the department through July 25, 1973, when his retirement was approved, effective March 15, 1973.

City charged his salary to accrued sick leave time and, when plaintiff demanded the payment of his sick leave after he had retired, it was denied to him by an administrative decision of the Civil Service Commission's Sick and Injury Leave Committee. It was from this decision that plaintiff appealed to the District Court where the cause was submitted to a jury.

Judgment was entered upon jury findings [1] and a stipulation of counsel in the

---

1. Two special issues were submitted:
*Special Issue No. 1*
"Do you find from a preponderance of the evidence that the Plaintiff's employment with the Fire Department of the City of Houston, Texas, was a producing cause of a myocardial infarction suffered by the Plaintiff on December 21, 1972?"
To which the jury answered: "We do."
" 'Producing Cause' means an injury or condition which, either independently or together with one or more other injuries or conditions,

sum of $5,655.10, with lawful interest and costs, and City has appealed. We reverse for the reasons now to be stated.

City contended in the trial court, and renews the contention on appeal, that the trial court did not have jurisdiction to hear and decide the cause. It admits, as indeed it must, that, notwithstanding the statute is silent as to the right of an appeal, where a vested property right is involved, the denial of such an appeal would be in contravention of a constitutional right. *City of Amarillo v. Hancock,* 150 Tex. 231, 239 S.W.2d 788, 790 (1951); reaffirmed in *Firemen's and Policemen's Civil Service Commission v. Kennedy,* 514 S.W.2d 237, 239 (Tex.1974).

■ Plaintiff had a right to sick and injury benefits only because of the provisions of *Tex.Rev.Civ.Stat.Ann. art. 1269m, § 26 (1963),* the material provisions being set out in the margin.[2] There is no definition in the statute of the words "in line of duty," but it is obvious that a claimant of benefits thereunder would have the burden of showing that his disability was caused by "injuries received while in line of duty."

■ Plaintiff had a right to receive his full pay while he was suffering from disability caused by an injury received in line of duty; and, if he established such fact, the city erred in charging the pay which he received to his accumulated sick leave. *City of Austin v. Phipps,* 337 S.W.2d 427 (Tex.Civ.App.—Austin 1960), affirmed, 162 Tex. 112, 344 S.W.2d 673 (1961).

Plaintiff was not required to seek any additional administrative review of City's action in charging his pay to his sick leave rather than paying for a disability caused by an injury received in line of duty. *Phipps,* supra, 344 S.W.2d 675.

results in incapacity, and without which such incapacity would not have occurred when it did."

*Special Issue No. 2*

"Do you find from a preponderance of the evidence that Plaintiff's Myocardial Infarction on December 21, 1972 was the result of an undesigned, untoward event traceable to a definite time, place and cause?"

To which the jury answered: "We do not."

■ In *Stauffer v. City of San Antonio,* 162 Tex. 13, 344 S.W.2d 158, 161 (1961), the Court included a lengthy quotation from the California Supreme Court decision in *French v. Cook,* 173 Cal. 126, 160 P. 411, 413 (1916), which included this language:

" 'The party having a vested right in the performance of the act, *if the facts are as claimed by him,* has also the right to have his claim as to the facts judicially determined.' " (emphasis supplied)

Thus, we hold that plaintiff could prosecute his suit only if he had a *vested* right and that right was contingent upon his establishing as a matter of fact that he had sustained an injury resulting in disability in line of duty. And, under *Phipps,* supra, 344 S.W.2d at 676, he was entitled to have the fact issues determined by a jury.

City's first points challenging the jurisdiction of the court to hear plaintiff's claim have no merit and are overruled.

An examination of Special Issue No. 1 makes it certain that the trial court couched the liability issue under the test of compensable injury as set out in the Workers' Compensation Act. The phrase "producing cause" was defined in the precise language found in *2 State Bar of Texas, Texas Pattern Jury Charges PJC 22.01 (1970).*

In its fourth point, City contends that this was error because such definition "is not applicable to this case." Finally, City contends that "the jury findings establish as a matter of law that plaintiff did not suffer a compensable injury."

In urging these points, City readily admits that our courts have been liberal in construing the words "accidental" and "injury" in workers' compensation cases involving heart attacks. See, e. g., *Olson v. Hartford Accident and Indemnity Co.,* 477 S.W.2d 859, 860 (Tex.1972).

**2.** The forepart of the cited *Section 26* spells out how sick leave is accumulated. The last full paragraph is the one applicable to the case at bar and it reads:

"Provided that all such cities coming under the provisions of this Act shall provide *injury leaves* of absence with full pay for periods of time commensurate with the nature of *injuries received while in line of duty* for at least one (1) year. . . . " (emphasis supplied)

But, it also points to other language found in *Olson,*

"For there to be an accidental injury, or an industrial accident, there must be an undesigned, untoward event traceable to a definite time, place, and cause. [477 S.W.2d at 859]

[and]

"[E]xcept in the case of the occupational diseases designated by the Legislature, it [the Supreme Court] has adhered to the requirement that there be an accidental injury traceable to a definite time, place, and cause. This element is lacking here." (Id. at 860)

■ City also calls to our attention language found in *Baird v. Texas Employers' Ins. Ass'n,* 495 S.W.2d 207, 211 (Tex.1973), that "a heart attack caused by strain or over-exertion is an accidental injury to the physical structure of the body within the meaning of the Workmen's Compensation Act." Language in *Henderson v. Travelers Ins. Co.,* 544 S.W.2d 649, 650 (Tex.1976), indicates the importance of such a holding. Making it very plain that "[t]he workmen's compensation law does not provide for health insurance," the court noted that the mere fact that an employee dies while on the premises of his employer during working hours is not sufficient to create liability. The burden is upon the claimant to show an accidental injury causing or contributing to the death.

In a very recent case, *Transportation Insurance Co. v. Maksyn,* 580 S.W.2d 334 (Tex.1979) [not yet reported except in 22 Tex.Sup.Ct.J. 237, 240 (February 28, 1979)], the Court held:

"It appears that the Texas Legislature drew its line for compensability for occupational diseases by limiting coverage to those cases in which physical activities cause harm or injury and by denying coverage when mental activities cause the harm or injury. The legislature very well reasoned that physical activities are identifiable and traceable whereas such factors as worry, anxiety, tension, pressure, and overwork are not. In the case of mental activities, there must be the more reliable proof of an ascertainable time, place, and event."

Having stated the rule with reference to the recovery under the compensation law, we turn now to an examination of plaintiff's own testimony concerning the cause of his heart attack.

First, we note that plaintiff did not even attempt to show *any* exertion. He was unable to state what work, if any, he did on the date he was stricken. He reported for work at four in the afternoon and had his attack four and a half hours later. Departmental records reveal that he did not have an assignment that day. When questioned, plaintiff could not recall any specific strain or exertion, emotional shock, accident, startling experience, or exciting mental stimulation. He readily admitted that if he had had the attack five hours earlier, he would not have claimed entitlement to an injury leave. He made no effort to show that his job was the cause of his heart attack; on the contrary, he asserts that he is entitled to injury leave status and pay *solely* because he was on duty at the time of the heart attack.

Plaintiff offered the testimony of Dr. John B. Stavinoha, a general practitioner who had treated him after his heart attack. This witness testified in detail as to the cause of heart attacks, as is shown by this short excerpt from his testimony. He answered a question with a question:

"A. What causes a heart attack?

THE COURT: What caused this one?

THE WITNESS: Okay. This one was caused by arteriosclerosis in a blood vessel that is leading to the heart and a shortage of the blood flow in that blood vessel and then the tissues distal to it dies."

The witness testified that in his opinion the plaintiff "was under a considerable amount of stress." Finally, in answer to a lengthy hypothetical question, and over City's objection, Dr. Stavinoha testified that the stress of the work being done by plaintiff "did contribute to his heart attack." It is to be noted that the hypotheti-

cal question did not contain any reference to any physical injury traceable to a definite time, place, and cause.

While our courts have been extremely liberal in allowing recovery for heart attacks under the compensation act—a statute entitled to and always given a liberal interpretation—plaintiff would not have made a submissible case even under that statute. *Olson,* supra, and *Maksyn,* supra.

■ The very statute which created the right plaintiff seeks to enforce spoke to his entitlement to accumulated sick leave pay. He could accrue fifteen working days of sick leave in one calendar year; and, he was entitled to payment of all accumulated sick leave, not to exceed ninety working days, when he left the service. *Sec. 26, Art. 1269m.* But, he was entitled to full pay during an injury leave of absence only because of disability from "injuries received while in line of duty."

Our dissenting brother, relying upon a series of out-of-state cases arising under different statutory provisions, equates disability with injury. Our statute requires proof of an injury as a condition precedent to a recovery.

The New York cases cited are not even persuasive, much less controlling in the disposition of this appeal. The applicable New York statute, a portion of which is quoted in *Sullivan v. Delphi Falls Fire Company,* 29 A.D.2d 584, 285 N.Y.S.2d 682, 683 (1967), provides for the recovery of death benefits as defined in the statute and their courts have held that "[t]here is no requirement that there must be an 'accidental injury arising out of and in the course of employment' . . . ."

An examination of each of the New York cases cited, and others,[3] reveals that in each instance, there was some unusual stress, strain, or physical activity which brought on the heart attack.

In each of the cases mentioned, the review was under the substantial evidence rule of procedure and, in each instance, the claimant had produced sufficient evidence to convince the Board that the heart attack resulted from stress and physical activity. No such proof is present here where plaintiff had the burden of proving an injury received in line of duty by a preponderance of the evidence.

Nor do we find the dictum in *Creighan v. Firemen's Relief and Pension Fund Bd.,* 397 Pa. 419, 155 A.2d 844, 848 (1959), persuasive. There, the fireman inhaled smoke while in line of duty fighting a fire and contracted tuberculosis as a consequence thereof. The Supreme Court of Pennsylvania simply held that so long as there was proof that the "injury arose out of performance of duty and the resulting disability became a continuing one," the statute authorized a recovery.

The Wisconsin court in *State v. Board of Trustees of Policemen's Pension Fund,* 138 Wis. 133, 119 N.W. 806, 807 (1909), was engaged in construing its own statute. In so doing, it used this language:

> "[T]he word 'injury' is used in this statute in a sense broad enough to include the contracting of a disease, *provided, of course, that such injury is suffered in the course of and by reason of the performance of the distinctive duties imposed upon the sufferer as a policeman . . .*" (emphasis supplied)[4]

■ We have noted earlier the complete absence of any evidence that anything happened to plaintiff while on duty which could have precipitated the heart attack. In all of the cases cited in the dissent there was some untoward event which contributed to cause the incapacity. Our statute provided for Caldwell to be paid if he became sick and unable to work for any reason; the same statute provided that he would be

---

3. See, e. g., *Fish v. Smithville Volunteer Fire Co.,* 12 A.D.2d 573, 206 N.Y.S.2d 822 (1960); *Morrison v. Canterbury Fire Dist.,* 13 A.D.2d 861, 214 N.Y.S.2d 518 (1961).

4. This holding would not be in conflict with the rule governing claims under the Texas Workers' Compensation Act. See, e. g., *Highlands Ins. Co. v. Clements,* 422 S.W.2d 218, 219 (Tex. Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.).

paid for an injury received while in line of duty. The mere fact that "Caldwell's heart attack occurred while he was on duty" did not establish that he received an injury in line of duty entitling him to the pay which he sought in this case.

■ Plaintiff labored under the burden of showing that his heart attack was caused by an injury received while in line of duty with the Fire Department. Insofar as shown by this record, plaintiff did not exert as much energy as it would take to wind his watch on the day in question. Considering the evidence from the standpoint most favorable to his contention and position—indeed, considering his own testimony alone— we find no evidence of probative force showing or tending to show that he sustained an injury in line of duty which was the producing cause of his heart attack. The evidence is simply nonexistent and does not even create a surmise or suspicion of the existence of any accidental injury. *Seideneck v. Cal Bayreuther Associates,* 451 S.W.2d 752, 755 (Tex.1970).

The judgment of the trial court is reversed and the judgment now rendered that plaintiff take nothing. It is so ordered.

DIES, Chief Justice, dissenting.

With respect, I dissent. The majority opinion deals entirely with the failure of Caldwell's proof to establish a compensable injury under the Texas Worker's Compensation Act. But here we are dealing with an entirely different act which compensates Caldwell for "injuries received while in the line of duty." *Tex.Rev.Civ.Stat.Ann. art. 1269m, § 26* (Vernon 1963). We must take a statute as we find it and find its intent in the language of the statute and not elsewhere. *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (1920); *Railroad Commission of Texas v. Miller,* 434 S.W.2d 670 (Tex.1968). In determining the meaning of a statute, the dominant consideration is to ascertain the intention of the Legislature, and this is to be found in the language of the statute itself. *Jones v. Del Anderson & Associates,* 539 S.W.2d 348 (Tex.1976).

If the Legislature had wished to define injury in this statute as it did in the worker's compensation act (which is what the majority holds), it certainly would have done so.

"It should first be noted that the term 'injury' as used in the Volunteer Firemen's Benefit Law as a predicate to the recovery of benefits requires only a disablement resulting from services 'in the line of duty' and not an 'accidental injury arising out of and in the course of employment' (i. e., an industrial accident) as required in the Workmen's Compensation Law (*Matter of Sullivan v. Delphi Falls Fire Co.,* 29 A.D.2d 584, 285 N.Y.S.2d 682). The activities of the decedent were clearly within this narrow legislative definition of coverage . . . ."

*Rigali v. Town of Colonie, Verdoy Fire Dist.,* 47 A.D.2d 507, 367 N.Y.S.2d 570, 572–3 (1975).

In *Sullivan v. Delphi Falls Fire Co.,* 29 A.D.2d 584, 285 N.Y.S.2d 682 (1967), a heart attack of a fireman in a Memorial Day parade was held 'in the line of duty.' See also *Lynch v. Tobriner,* 237 F.Supp. 313, 316 (U.S.D.C.1965). "The word 'injury' is not limited to injuries caused by violence or physical force. It must be given a broader and more liberal meaning." See also *State ex rel. McManus v. Board of Trustees of Policemen's Pension Fund,* 138 Wis. 133, 119 N.W. 806, 807 (1909) (where a policeman caught pneumonia while on a trip to make an arrest). "Therefore there is nothing inherent in the word [injury] to limit the injuries to which this statute applies to those from physical or external violence." See also *Creighan v. Firemen's Relief and Pension Fund Board of City of Pittsburgh,* 397 Pa. 419, 155 A.2d 844 (1959), where a fireman contracted tuberculosis.

*Tex.Rev.Civ.Stat.Ann. art. 10* (Vernon 1969) requires "The ordinary signification shall be applied to words . . . ." Caldwell's heart attack occurred while he was on duty and thus to this writer clearly "in the line of duty." I would affirm the judgment of the trial court.